IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| GREENWOOD COMMUNITIES AND RESORTS, INC., | ) ) ) | No. 9:16-cv-3995 |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| SELECTIVE INSURANCE COMPANY OF AMERICA, | ) ) ) | |
| Defendant. | ) ) ) | |

This matter comes before the court on defendant Selective Insurance Company of America's ("Selective") motion for summary judgment, ECF No. 50, and on plaintiff Greenwood Communities and Resorts, Inc.'s ("Greenwood") cross-motion for summary judgment, ECF No. 56. For the reasons set forth below, the court grants Selective's motion for summary judgment and denies Greenwood's motion for summary judgment.

## I. BACKGROUND

This litigation arises out of an insurance coverage dispute. Greenwood owns and operates three golf courses that sustained damage in 2016 when Hurricane Matthew hit Hilton Head Island, South Carolina. ECF No. 27-1 at 1. All three courses closed due to the damage from the hurricane's strong winds, resulting in loss of business income for Greenwood. ECF No. 30 at 2. Selective had previously issued a commercial inland marine policy ("the Policy") to Greenwood that was in effect when the hurricane made landfall. The Policy included supplemental coverage, titled "Tees, Greens, and Cut Fairways," providing protection for losses to the golf

1

courses. However, when Greenwood reported its losses from the hurricane, Selective denied to provide full coverage for the damage to the golf courses on the basis that wind and flooding were not covered under the Policy.

Greenwood originally filed suit on December 7, 2016 in the Court of Common Pleas for Beaufort County, South Carolina, seeking a declaratory judgment that the Policy should cover the damage to the golf courses, and bringing claims for breach of contract and bad faith. ECF No. 1 at 1. The case was properly removed to federal district court based on diversity jurisdiction on December 22, 2016. Id. On September 1, 2017, Selective filed a motion for summary judgment, ECF No. 27, and on September 13, 2017 Greenwood filed a cross-motion for summary judgment, ECF No. 30. The court dismissed both motions without prejudice, allowing the parties to re-file their motions after the completion of discovery. On May 9, 2018, Selective filed its renewed motion for summary judgment. ECF No. 50. On May 30, 2018, Greenwood filed a response, ECF No. 55, and on June 6, 2018, Selective filed a reply, ECF No. 60. On June 4, 2018, Greenwood filed its motion for summary judgment. ECF No. 56. On June 18, 2018, Selective filed a response, ECF No. 63, and on July 2, 2018, Greenwood filed a reply, ECF No. 66. The court held a hearing on July 26, 2018. The matters have been fully briefed and are now ripe for the court's review.

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). "Rule 56(c) of the Federal Rules of Civil Procedure requires that the district court enter judgment against a party who, 'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 190 (4th Cir. 1997) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). Any reasonable inferences are to be drawn in favor of the nonmoving party. See Webster v. U.S. Dep't of Agric., 685 F.3d 411, 421 (4th Cir. 2012). However, to defeat summary judgment, the nonmoving party must identify an error of law or a genuine issue of disputed material fact. See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); see also Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003).

Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence. See Anderson , 477 U.S. at 252; Stone, 105 F.3d at 191. Rather, "a party opposing a properly supported motion for summary judgment . . . must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e) (2002) (amended 2010)). If the adverse party fails to provide evidence establishing that the factfinder could reasonably decide in his favor, then summary judgment shall be entered "regardless of '[a]ny proof or evidentiary requirements imposed by the substantive law.'" Id. (quoting Anderson, 477 U.S. at 248).

## III. DISCUSSION

Both parties have brought motions for summary judgment on all three of Greenwood's causes of action—declaratory judgment, breach of contract, and bad faith. The declaratory judgment action arises over a dispute between two conflicting sections of the Policy. Included in the Policy issued by Selective was a Tees, Greens and Cut Fairways coverage form, CM 7184 04/07, (the "Coverage Form") that provides certain specified coverage for damage to the golf courses operated by Greenwood. ECF No. 50-2, Ex. A at 2. This form lists certain causes of loss covered under the Policy, including "windstorm or hail, but not including rain, sleet or snow, whether driven by wind or not." Id. Selective also included a "Special Provisions" section on the declarations page for the Coverage Form, CM 7183 11/09 ("Special Provisions"). These Special Provisions state that "wind, hail and flood are excluded from" the coverage for the three golf courses. Id. at 1. Selective bases its refusal to cover damages to the golf courses on the language of the Special Provisions. Greenwood claims that the language in the Coverage Form, which covers losses caused by windstorms and hail, should control. Greenwood also alleges that Selective's failure to properly investigate Greenwood's insurance claim or provide coverage was in bad faith.

These cross-motions for summary judgment present the same issues. First, the court must determine whether the typewritten Special Provisions section of the Policy, which excludes coverage for wind, hail, and flood damage, should prevail over the printed text of the Coverage Form. The court must then address Greenwood's allegations that the Policy is void because Selective failed to submit the Special Provisions to the South Carolina Department of Insurance ("DOI") for approval. Also at issue is whether

Selective should provide coverage for sinkholes on the golf course. Finally, the cross-motions for summary judgment ask the court to grant summary judgment on Greenwood's bad faith claim. The court addresses each in turn.

**A. Reconciling the Special Provisions with the Coverage Form**

There does not appear to be any dispute about whether the Policy was properly formed. The only dispute is whether the Policy should be interpreted according to the Special Provision, which excludes coverage for wind, hail, and flood damage, or whether it should be interpreted according to the Coverage Form, which includes coverage for windstorm and hail damage. Selective argues that the Special Provisions language should control, based on the contract principle that the typewritten terms in the Special Provisions prevail over the printed terms in the Coverage Form. Greenwood contends that the Coverage Form should control because the contract is ambiguous, and ambiguous insurance policies should be construed in favor of the insured. Greenwood argues that there is a patent ambiguity in the contract, and that the court must therefore resolve the patent ambiguity in favor of the insured. ECF No. 56 at 6, citing Ward v. Dixie Nat. Life Ins. Co., 257 F. App'x 620, 626 (4th Cir. 2007) ("[O]nly latent ambiguities in an insurance policy are resolved by a jury; patent ambiguities must be resolved in favor of the insured.") (emphasis added). Greenwood does not want the court to view the difference in the two provisions as a latent ambiguity, because then Selective can bring in external evidence to demonstrate the intent of the parties regarding the conflicting provisions, as discussed further below. The court finds that there is no ambiguity at all, and therefore that the typewritten language of the Special Provisions controls.

5

It is well established that "[w]here part of a contract is written or typed and part is printed, and the written or typed and the printed parts are apparently inconsistent or where there is reasonable doubt as to the sense and meaning of the whole, the words in writing or typing will control." First S. Bank v. Bank of the Ozarks, 2012 WL 3597665, at *7 (D.S.C. Aug. 20, 2012), aff'd, 542 F. App'x 280 (4th Cir. 2013). This is because "the written or typed words are the immediate language and terms selected by the parties themselves for the expression of their meaning, while the printed form is intended for general use without reference to particular objects and aims." Id.; see also Hawkins v. Greenwood Dev. Corp., 493 S.E.2d 875, 879 (S.C. Ct. App. 1997) (holding that when there is an inconsistency between printed and handwritten provisions in a contract, the handwritten provision prevails), B. Eliot Ltd. v. John T. Clark & Son of Maryland, Inc., 704 F.2d 1305, 1308 (4th Cir. 1983) ("According to general rules of contract interpretation, separately negotiated or added terms will prevail over the conflicting printed part of a contract."). Accordingly, the terms of the typewritten Special Provisions, which deny coverage for wind, hail, and flood, prevail over the language in the printed Coverage Form, which provides coverage for windstorms and hail.[1]

The key issue here is whether the difference between the two forms is simply a conflict between two forms or provisions—which should be construed in favor of the typewritten provision—or whether it is an ambiguity in the contract. If there is an ambiguity in the contract, then the ambiguity should be construed in favor of the insured party, the party that did not write the ambiguous term. Whitlock v. Stewart Title Guar.

---

[1] Greenwood conceded at the hearing on July 26, 2018, that the Special Provisions are typewritten.

Co., 732 S.E.2d 626, 628 (S.C. 2012). "A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular [ ] business." Williams v. Gov't Employees Ins. Co. (GEICO), 762 S.E.2d 705, 710 (S.C. 2014). However, under South Carolina law, the concept of contractual ambiguity refers to when a particular term within a contract is ambiguous, not whether there are two provisions within the same contract that directly conflict with one another. See, e.g., Whitlock, 732, S.E. at 628–29 (interpreting the ambiguous contract in favor of the insured because the contract failed to define the meaning of "date of discovery of title"), S.C. Dep't of Nat. Res. v. Town of McClellanville, 550 S.E.2d 299, 302 (S.C. 2001) ("A contract is ambiguous when the terms of the contract are reasonably susceptible of more than one interpretation."), Diamond State Ins. Co. v. Homestead Industries, Inc., 456 S.E.2d 912, 915–16 (S.C. 1995) (discussing the potential ambiguity in the term "bodily injury"), Pee Dee Store, Inc. v. Doyle, 672 S.E.2d 799, 803–805 (S.C. Ct. App. 2009) (finding the phrase "landlord/tenant claims" ambiguous because it is "susceptible to more than one interpretation").

Here there is no ambiguity about the terms "wind," "hail," or "flood." Instead of ambiguity about how to interpret a particular term, the issue at hand is about two separate provisions within a single insurance policy that say different things about whether coverage is provided for wind and hail.

Selective has submitted numerous pieces of evidence indicating the intent of the parties to not contract for wind, hail, and flood insurance. ECF No. 50 at 4–5.

Greenwood contests some of this evidence. However, it is unnecessary to consider any of this evidence, because parol evidence is only admissible when a contract term is ambiguous. Specifically in regards to an insurance policy, if the ambiguity is patent—"one where the uncertainty as to meaning arises upon the words of the will, deed, or other instrument as looked at in themselves, and before any attempt is made to apply them to the object which they describe"—then it should be resolved in favor of the insured. Ward v. Dixie Nat. Life Ins. Co., 257 F. App'x 620, 626 (4th Cir. 2007), quoting Jennings v. Talbert, 58 S.E. 420 (S.C. 1907). A latent ambiguity—where the terms to do not appear ambiguous on the face of the contract until looked at in the context of "collateral facts"—must be resolved by a jury. Id. Here, there is neither a patent nor latent ambiguity. There is no confusion about the meaning of any of the policy terms. Rather, there are two directly conflicting, but otherwise unambiguous provisions, and the court's task is to determine which provision prevails. As discussed above, the typewritten portion prevails. Thus, the court finds that Selective is not required to provide coverage for damage caused to the golf courses by wind, hail, or flood.

**B. Submission of the Special Provisions to the S.C. Department of Insurance**

Greenwood argues that the court should find the Policy to be void, as Selective did not submit the Special Provisions page to the DOI. ECF No. 56 at 12. Under South Carolina law:

> It is unlawful for an insurer doing business in this State to issue or sell in this State any exempt commercial policy, contract, or certificate until it has been filed with and approved by the director or his designee. . . . However, this section does not apply to surety contracts or fidelity bonds, except as required in Section 38-15-10, or to insurance contracts, riders, or endorsements prepared to meet special, unusual, peculiar, or extraordinary conditions applying to an individual risk.

S.C. Code Ann. § 38-61-25.

Selective had previously submitted the Coverage Form and the rest of the Policy to the DOI for approval, in addition to the template that was later used for the Special Provisions page, before the additional terms were added. However, Selective did not submit the Special Provisions page for approval after it added the specific terms for wind, hail, and flood exclusion. Greenwood argues that this renders those provisions void. Selective argues that the Special Provisions page is exempt under § 38-61-25, because it is an insurance rider that was "prepared to meet special . . . conditions applying to an individual risk." Id. According to Selective, this case posed the "special risk of a golf course located on a barrier island highly susceptible to windstorm and flood damage." ECF No. 63 at 10. The court agrees.

To support its argument that Selective's Special Provisions form "does not fall within the category of 'insurance contracts, riders, or endorsements prepared to meet special, unusual, peculiar, or extraordinary conditions applying to an individual risk,'" Greenwood submitted a list of declarations from other golf courses along the South Carolina coast for which Selective provides wind coverage. ECF No. 56 at 13, quoting § 38-61-25. However, this actually proves Selective's point; it demonstrates that it was not Selective's policy to exclude wind coverage to every single golf course on the South Carolina coast, but that it chose to exclude certain provisions for these particular courses' "individual risk." Thus, the court finds the completed Special Provisions page exempt from the requirements of § 38-61-25. The court sees no reason to declare the completed Special Provisions page invalid due to Selective failing to submit it to the DOI.

### C. Sinkhole

The issue of whether coverage for sinkhole collapse should have been provided is now before the court. The complaint did not address coverage for sinkholes, and Greenwood raises the issue for the first time in this current round of motions for summary judgment. Greenwood argues that Selective acted in bad faith when its claims adjuster, David Clark ("Clark") took pictures of the alleged sinkhole damage and failed to retain an expert to provide an analysis of the damage, even though he did not know the cause of the damage. ECF No. 56 at 17, citing Clark Dep. 30:1–37:1. Greenwood cites the deposition of Jim Pebbles ("Pebbles"), an adjuster for Selective who supervised the approximately 70 golf course claims following Hurricane Matthew. According to Pebbles, if a claim is "presented as a sinkhole loss," Selective "secure[s] an engineer and [has] them look at" the sinkhole. Pebbles Dep. 36:16–41:19. However, Pebbles also stated that an insurance owner needs to make Selective aware of the sinkhole claim and that "[i]f the adjuster doesn't have any suspicions that it's anything other than possibly just some sort of erosion, they wouldn't have any knowledge that it was sinkhole activity" and that they "wouldn't expect it in South Carolina." Id. Selective argues that "Clark's investigation was adequate to determine that the damages submitted to Selective were caused by wind or water" and were thus excluded under the Policy. ECF No. 63 at 12. Greenwood's expert claims that it was Selective's responsibility to conduct a thorough enough investigation to determine the cause of the damage. Miller Dep. 94:21–99:10.

The problem with this entire argument is that Greenwood never submitted an insurance claim to Selective for sinkhole damage—not immediately after Hurricane

Matthew, and indeed not even now. At the hearing on these motions, the parties discussed vaguely the costs of sinkhole repair, but Greenwood has not submitted any itemized list of sinkhole damage to Selective that it needs covered. Selective has not even had the opportunity to deny sinkhole coverage. Thus, Greenwood cannot sustain its allegation that Selective acted in bad faith by denying sinkhole coverage when no claim for sinkhole coverage has ever been made. If Greenwood chooses to actually submit a claim for sinkhole coverage and that claim is denied by Selective—which is unlikely, considering that both parties have acknowledged that there is sinkhole damage on the golf course and that the policy covers sinkhole damage—then Greenwood can at that time bring a complaint for bad faith refusal to cover sinkhole damage.

### D. Bad Faith Claim

Greenwood's complaint contends that "Selective's refusal to pay Greenwood for the losses it has incurred as a result of Hurricane Matthew's effects is the result of bad faith." ECF No. 1 at 6. Selective responds that it did not operate in bad faith because it had a right to litigate meritorious issues. The court agrees. In South Carolina, "if there is a reasonable ground for contesting a claim [for coverage under an insurance policy], there is no bad faith." Helena Chemical Co. v. Allianz Underwriters Ins. Co., 594 S.E.2d 455, 462 (S.C. 2004); see also Watson v. Foremost Signature Ins. Co., 2014 WL 130424 (D.S.C. Jan 14, 2014 (granting summary judgment in favor of insurer on a bad faith claim when "nothing in the record suggests that insurer's failure to pay was anything other than a good-faith dispute about the extent of coverage or the cause of damage.").

Here, Selective's refusal to pay for the damage caused by the hurricane winds to Greenwood's golf course is based solely on its interpretation of the Policy, not on

11

anything more sinister. It was reasonable for Selective to interpret the Policy as excluding coverage for wind, hail, and flood damage, because the terms of a type-written portion of a contract prevailed over the printed terms. Thus, the court grants summary judgment to Selective on the bad faith claim and finds that Selective's denial of coverage for wind and flood damage did not amount to bad faith.

## IV. CONCLUSION

For the reasons set forth above, the court **GRANTS** Selective's motion for summary judgment and **DENIES** Greenwood's motion for summary judgment.

**AND IT IS SO ORDERED.**

 

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 7, 2018**
**Charleston, South Carolina**